IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES M. CHAMPION, | : | |
| Plaintiff, | : | Case No. 3:06cv001 |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| PLASTIPAK PACKAGING, INC., | : | |
| Defendant. | : | |

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #22); JUDGMENT TO BE ENTERED IN
FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION
ENTRY

Plaintiff Charles Champion ("Plaintiff" or "Champion") brings this workplace,

intentional tort action in accordance with Blankenship v. Cincinnati Milacron

Chemicals, Inc., 69 Ohio St.2d 608, 433 N.E.2d 572, cert. denied, 459 U.S. 857

(1982), and its progeny. In his Amended Complaint (Doc. #15),[1] the Plaintiff

alleges that, on December 21, 2003, his hand was caught in the rotating portion of

a machine, which he was using in the course of his employment with Defendant

---

[1]That pleading is divided into Counts I, II and III. In Count I, the Plaintiff has set
forth allegations concerning the facts and circumstances giving rise to this
litigation. In Count II, Champion has set forth his intentional tort claim, and, with
Count III, he has requested the remedy of an award of punitive damages,
predicated on Count II. Consequently, the only substantive claim set forth in
Plaintiff's Amended Complaint (Doc. #15) is the intentional tort claim.

Plastipak Packaging, Inc. ("Defendant" or "Plastipak"), at its manufacturing facility located in Jackson Center, Ohio.[2] As a consequence, the Plaintiff's thumb was traumatically amputated, by being torn off.

This case is now before the Court on the Defendant's Motion for Summary Judgment (Doc. #22). As a means of analysis, this Court will initially review the procedural standards it must apply, whenever it rules on a motion seeking summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such request. The Court will begin its discussion of the parties' arguments by reviewing the facts and circumstances giving rise to this litigation.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions,

---

[2]In addition to Plastipak, Plaintiff has named Plastipak Packaging Division of Absopure Water and a number of fictitious entities as Defendants. The former, which has not entered an appearance herein, is only listed in the caption of the Amended Complaint, while the Plaintiff has not moved to substitute actual parties for the fictitious defendants. Therefore, this Court treats this litigation as if it has been brought against a single Defendant, Plastipak, and dismisses, for want of prosecution, the fictitious defendants and Plastipak Packaging Division of Absopure Water.

answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6ᵗʰ Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6ᵗʰ Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6ᵗʰ Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6ᵗʰ Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary

material in support of its position. Celotex Corp., 477 U.S. at 324. Summary

judgment "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment

shall be denied "[i]f there are ... 'genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor

of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992)

(citation omitted). Of course, in determining whether a genuine issue of material

fact exists, a court must assume as true the evidence of the nonmoving party and

draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at

255 (emphasis added). If the parties present conflicting evidence, a court may not

decide which evidence to believe, by determining which parties' affiants are more

credible; rather, credibility determinations must be left to the fact-finder. 10A

Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a

motion for summary judgment (in other words, in determining whether there is a

genuine issue of material fact), "[a] district court is not ... obligated to wade

through and search the entire record for some specific facts that might support the

nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6[th]

Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc.

v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco

Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record

in search of evidence to support a party's opposition to summary judgment ....").

Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

During the summer of 2003, Defendant hired the Plaintiff to work at its manufacturing facility in Jackson Center, Ohio.[3] Initially, Plaintiff worked on Line 40, inspecting plastic bottles manufactured at that facility, before they were loaded into boxes for shipping to customers.[4] Occupying that position is referred to as working downstream. Later, during August, 2003, the Plaintiff became an operator of a Graham Wheel on Line 40, a machine which was utilized to manufacture those plastic bottles through a molding process.[5] While Plaintiff was

---

[3]Since this matter comes before the Court on the Defendant's Motion for Summary Judgment (Doc. #22), the Court reviews the evidence in the manner most favorable to the Plaintiff, the party against whom such a judgment has been sought. That evidence is comprised solely of a copy of the transcript of Plaintiff's deposition, without copies of the exhibits identified and discussed during that deposition, and the affidavits of Richard Parry, an expert witness retained by the Defendant, and of Vincente Ward, a co-worker of the Plaintiff. In his Opposing Memorandum (Doc. #26), the Plaintiff also cited the report of his expert witness, Alan Riga. This Court will not consider that report when ruling on the Defendant's Motion for Summary Judgment (Doc. #22), since the Court has previously sustained the Defendant's unopposed motion to strike that report from consideration on its request for summary judgment. See Doc. #31.

[4]The evidence establishes that, throughout his employment, Plaintiff worked the second shift, which began at 3:30 p.m., and lasted until 11:30 p.m.

[5]The dates upon which Champion began his employment with Plastipak and transferred to the position of operator are not entirely clear. However, Plaintiff signed documents on August 19, 2003, indicating, inter alia, that he had been trained as a Wheel operator. See Plaintiff's Dep. at 47-49. Plaintiff testified that he had received that training after he had become a Graham Wheel operator. Id. at 28.

still working downstream, another Graham Wheel operator gave him basic instructions on operating that machine, which allowed him (Plaintiff) to operate that machine successfully on one occasion when that other operator had been assigned other duties. After Plaintiff had begun working as a Graham Wheel operator, he was required to come in early, in order to be given classroom instruction concerning the operation of the Wheel, as well as being tested on that subject. That training included instructions on start up procedures for the Graham Wheel when it was being operated by one person, on the proper use a gripper or picker and the Defendant's lockout/tagout procedures. Plaintiff's Dep. at 39-40 and 47-49.[6] Plaintiff successfully completed training on those subjects.

As indicated, a Graham Wheel is a machine that manufactures plastic bottles through a molding process. Such a machine is comprised of a number of molds, which are attached to a "wheel." The molds of such a machine are comprised of tops and bottoms, which open to permit manufactured bottles to be expelled and which then close to permit additional bottles to be molded. In particular, melted plastic is blown into a closed mold which is being rotated by the wheel. When the plastic has cured, the mold opens, and the bottle will drop onto a conveyor belt. The mold then snaps shut, and additional melted plastic is blown into it. The area where a mold opens is covered by a steel mesh roller cage, with a ten inch by ten inch access hole.

---

[6]A copy of the transcript of Plaintiff's deposition, without the exhibits discussed therein, is attached to Defendant's Motion for Summary Judgment (Doc. #22). In his Memorandum in Opposition (Doc. #26), Champion occasionally cites the exhibits to his deposition. However, since he has not cured the Defendant's failure to include those exhibits, this Court is unable to consider same when ruling on the Defendant's motion.

A Graham Wheel is designed to be run continuously. When such a machine is stopped for any reason, the critical time temperature cycle of the molding process is interrupted. As a result, all molds have to be cleared before a Graham Wheel can be restarted, and malformed bottles have to be manually cleared during the start-up process.[7] Under Plastipak's start-up process, the Graham Wheel operator removes malformed bottles from the molds by using a toll referred to variously by the parties as a picker or a gripper.[8] A xeroxed copy of a picture of a gripper is attached to and authenticated by the affidavit of Richard Parry ("Parry"), Defendant's expert witness. See Doc. #22 at Ex. B. A gripper is a pistol grip tool, approximately 14 inches in length. Such a tool has a pistol grip handle, used to close two metal pincers at its end, to allow something to be gripped and moved. During his deposition, Plaintiff testified that there was about a foot between the location of the user's hand on the handle of a gripper and the end of the pincers and that, therefore, an operator's hand would be about a foot away from a mold, when removing a malformed bottle therefrom.[9] Plaintiff's Dep. at 51. Indeed, on August 19, 2003, Plaintiff signed a document stating that he would not to reach into the mold area with his hands.[10]

---

[7]As indicated above, Champion was trained on that process.

[8]This Court will refer to such a tool solely as a gripper.

[9]Plaintiff's testimony in that regard is supported by Parry's affidavit, as well as the measurements set forth in that of Vincente Ward.

[10]In his Memorandum in Opposition, Champion points out that the Defendant has offered no evidence explaining what is meant by the mold area. See Doc. #26 at 3. In the context of the factual record presented in this litigation, it is apparent that the mold area is the area of an open mold into which an operator will insert a gripper to remove a malformed bottle.

On December 21, 2003, approximately four months after he had become an operator of a Graham Wheel, Plaintiff was working the second shift, performing the duties of such an operator on Line 41, since the individual who normally operated the Graham Wheel on Line 41 was off that day.[11] The power at Plastipak's Jackson Center manufacturing facility went out at some time between 6:00 and 6:30 p.m. The electricity remained off for approximately 30 minutes. When the power was restored, Plaintiff was required to go through the start-up procedure. As the Graham Wheel started to rotate, he attempted to remove malformed bottles from the first two molds.[12] Using his right hand, he reached with the gripper into an open mold, with his hand remaining outside the open mold. While attempting to remove such a bottle from the third mold, Champion's thumb was in some way traumatically amputated. During his deposition, the Plaintiff initially testified that his injuries had occurred as a result of the glove he was wearing getting caught on a hose in the front of an open mold, although he was not aware of how that had happened. Plaintiff's Dep. at 56-57, 60-62. He subsequently explained, however, that his testimony about his glove being caught on a hose was based upon the statement by some unnamed person or persons that his glove had been found on the hose. Id. at 76-77. Indeed, Plaintiff has no personal recollection of how the incident causing his thumb to be traumatically amputated occurred. Id. at 76-77 (no personal recollection of whether his glove was caught on a hose), 79-82 (no personal recollection of whether the mold closed), 83 (no personal recollection of

---

[11]That was the first time Plaintiff had operated the Graham Wheel on Line 41, although there is no evidence that it differed from the Graham Wheel on Line 40, other than the control panels on the two machines were set up differently.

[12]Plaintiff was squatting or crouching while he was performing those tasks.

whether the machine stopped). Again, his only explanation for the cause of the incident was that his thumb got caught in the hose.

After the incident, the Plaintiff was taken to St Rita's Memorial Hospital in Lima, Ohio, where he was treated.[13] Subsequent efforts to reattach his thumb proved to be unsuccessful. Therefore, Plaintiff is without a thumb on his right hand. At the time of his deposition, Champion was employed as a truck driver.

As indicated, the Plaintiff has set forth a workplace, intentional tort claim. In Fyffe v. Jeno's Inc., 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991), the Ohio Supreme Court defined, in paragraph 1 of the syllabus, the "intent" necessary to support such a claim:[14]

> 1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed. 1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (Van Fossen v. Babcock & Wilcox Co. [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

_____ _____

[13]Plaintiff was also given a drug test at that medical facility. Plastipak fired him, because he tested positive for marijuana.

[14]Plaintiff has not argued, nor has he submitted evidence in support of the proposition that there is direct evidence of Defendant's intent to injure him. Accordingly, the Court concludes that the intentional tort claim must be established inferentially, in accordance with the Fyffe test.

- 9 -

See also, Jandro v. Ohio Edison Co., 167 F.3d 309, 313 (6th Cir. 1999) (noting

that Fyffe is "[t]he definitive Ohio case on the requirements for establishing an

intentional tort claim against an employer"). In paragraph 2 of the syllabus of

Fyffe, the Ohio Supreme Court elaborated upon the second prong of its test (i.e.,

that harm to the employee will be a substantial certainty):

> 2. To establish an intentional tort of an employer, proof beyond that
> required to prove negligence and beyond that to prove recklessness must be
> established. Where the employer acts despite his knowledge of some risk,
> his conduct may be negligence. As the probability increases that particular
> consequences may follow, then the employer's conduct may be
> characterized as recklessness. As the probability that the consequences will
> follow further increases, and the employer knows that injuries to employees
> are certain or substantially certain to result from the process, procedure or
> condition and he still proceeds, he is treated by the law as if he had in fact
> desired to produce the result. However, the mere knowledge and
> appreciation of a risk—something short of substantial certainty—is not
> [sufficient inferred] intent. (Van Fossen v. Babcock & Wilcox Co. [1988], 36
> Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as
> set forth above and explained.)

59 Ohio St.3d at 115, 570 N.E.2d at 1110.

Defendant argues that it is entitled to summary judgment, because the

Plaintiff has failed to establish a prima facie case of a workplace, intentional tort.

"In order to set forth a prima facie case of an employer intentional tort, a plaintiff

must establish all three elements of the Fyffe test." Pinkerton v. Thompson, 174

Ohio App.3d 229, 240, 881 N.E.2d 880, 889 (2007). For reasons which follow,

the Court concludes that the evidence fails to raise a genuine issue of material fact

on the second prong of that test; therefore, it is not necessary to discuss the other

two prongs of Fyffe.[15] Id. (noting that "a determination that no genuine issue of

---

[15]In addition, it is not necessary to address Defendant's alternative argument that it
is entitled to summary judgment, because Champion's testimony about the manner
in which he suffered his injuries is barred by the physical facts doctrine. The

material fact exists as to one of the elements moots any discussion of the other elements").

As an initial matter, Plaintiff cites the following passage from the decision of the Franklin County Court of Appeals in Taulbee v. Adience, Inc., 120 Ohio App.3d 11, 696 N.E.2d 625 (1997):

> The three prongs of the Fyffe test are questions of fact, and resolution of such facts is, of course, the province of the trier of fact and not by way of summary judgment. Maples v. Columbus Zoological Park Association (1993), 91 Ohio App. 3d 133, 631 N.E.2d 1105 (1993 Opinions 4430). However, in determining whether a case will survive a motion for summary judgment, a court must decide what degree of risk an employer can take before its conduct is legally considered to be, or can legally be inferred to be, an intentional act to injure. Richie v. Rogers Cartage Co. (1993), 89 Ohio App. 3d 638, 644, 626 N.E.2d 1012. Thus, the determinative issue in many employer intentional tort cases is whether a genuine issue of material fact exists on the very question of the employer's awareness of the certainty of harm to which the plaintiff is subjected based upon the facts before the court.

Id. at 17, 696 N.E.2d at 629 (footnote omitted). Despite the first sentence in that quotation, this Court does not understand Champion to be arguing that the Taulbee court held that summary judgment is inappropriate in workplace, intentional tort cases. On the contrary, the Franklin County Court of Appeals has frequently affirmed the grant of summary judgment in favor of the defendant in a workplace, intentional tort case, because the evidence failed to raise a genuine

---

physical facts doctrine or rule was initially recognized in Carroll v. Pennsylvania R. R., 12 W.N.C. 348, 349 (1882), wherein the court held that "[i]t is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." In Harris v. General Motors Corp., 201 F.3d 800, 802-03 (6th Cir. 2000), the Sixth Circuit applied that rule, when affirming the grant of summary judgment in a products liability action arising under Ohio law. See also, McDonald v. Ford Motor Co., 42 Ohio St.2d 8, 326 N.E.2d 252 (1975); Briach v. Pennsylvania R. Co., 492 F.2d 266 (3d Cir. 1972).

- 11 -

issue of material fact concerning one of the elements of the Fyffe test. See e.g., Arick v. Seagle Masonry, Inc., 2007 WL 60525 (Ohio App. 2007); Ford v. Complete Gen. Const. Co., 2006 WL 3805684 (Ohio App. 2006); Spurlock v. Buckeye Boxes, Inc., 2006 WL 3746127 (Ohio App. 2006). Moreover, the Sixth Circuit has reached the same conclusion in many such cases. See e.g., Eilerman v. Cargill, Inc., 2006 WL 2310736 (6th Cir. 2006); Smith v. Gen. Motors Corp., 2006 WL 559372 (6th Cir. 2006), cert. denied, 127 S.Ct. 123 (2006); Harris v. Sunoco, Inc., 2005 WL 1400198 (6th Cir. 2005); Jandro, supra. Therefore, the Court turns to the question of whether the evidence raises a genuine issue of material fact concerning the second element of the Fyffe test, to wit: "knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty."

To resolve that question, this Court must initially identify the "dangerous process, procedure, instrumentality or condition," which Champion contends caused his thumb to be traumatically amputated on December 21, 2003. According to Plaintiff, that dangerous process was requiring its employees to reach their hands through the roller cage, in order to remove malformed plastic bottles from a "machine capable of pulling–not cutting, pulling off a man's thumb." Doc. #26 at 10. The Court accepts that Champion was as a result subjected to a dangerous process or procedure. Based upon the following, this Court concludes that the evidence does not, however, raise a genuine issue of material fact as to whether Plastipak knew to a substantial certainty that an injury to an employee subjected to same would be injured.

- 12 -

First, as is noted above, neither the Plaintiff nor anyone else has personal knowledge as to how the incident causing his thumb to be traumatically severed occurred. No jury could find that the probability of an injury to the Plaintiff was a substantial certainty, when the Plaintiff himself does not know how that injury occurred.

Second, in reviewing the grant of motions for summary judgment (or for directed verdict) on the second prong of the Fyffe test, Ohio appellate courts have generally held that the absence of substantially similar, prior incidents poses a serious impediment to a plaintiff's workplace, intentional tort claim. See e.g., Ford v. Complete Gen. Const. Co., 2006 WL 3805684 (Ohio App. 2006) (noting that "[e]stablishing the employer's knowledge of substantial certainty of harm is difficult where there are not prior accidents of a similar character") (internal quotation marks and citations omitted); Williams v. Advanced Engineering Solutions, Inc., 2005 WL 1799291 (Ohio App. 2005); English v. General Elec. Co., 2004 WL 2659251 (Ohio App. 2004); Gertz v. Nerone & Sons, Inc., 2002 WL 1728594 (Ohio App. 2002); Foust v. Magnum Restaurants, Inc., 97 Ohio App.3d 451, 455, 646 N.E.2d 1150, 1153 (1994) (holding that, while evidence of a lack of prior accidents, "standing alone, may not be conclusive, it strongly suggests, as in the instant action, that injury from the procedure was not substantially certain to result from the manner in which the job was performed"); Wehri v. Countrymark, Inc., 82 Ohio App.3d 535, 538, 612 N.E.2d 791, 793-794 (1992) (showing of no prior accidents evidencing a dangerous condition curtails plaintiff's intentional tort claim); Zink v. Owens-Corning Fiberglas Corp., 65 Ohio App.3d 637, 643-644, 584 N.E.2d 1303, 1307-1308 (1989) (holding that evidence showing lack of prior

- 13 -

accidents negates daunting standard of substantial certainty and intentional tort). In each one of those decisions, the court held that the lack of similar previous accidents demonstrated the lack of a genuine issue of material fact on the substantial certainty prong of the Fyffe test, since there was an absence of additional evidence tending to show that the defendant had knowledge that, if its employee were subjected by his employment to a dangerous process, procedure, instrumentality or condition, then harm to the employee would be a substantial certainty.

Herein, there is no evidence of other similar incidents occurring in the Defendant's manufacturing facility. During his deposition, Champion testified that he was not aware of any such incident. Plaintiff's Dep. at 86. In addition, the affidavit of Vicente Ward ("Ward"), which Plaintiff has submitted in opposition to the Defendant's motion (see Doc. #26),[16] does not cause the Court to conclude that another similar incident had occurred. Therein, Ward states that he was injured about one year before the Plaintiff was injured, removing a jammed plastic bottle. However, he has not indicated the type of injury he suffered or how it occurred. Therefore, the Court is unable to conclude that Ward suffered an injury in an incident that was similar to that which caused the Plaintiff to lose his

---

[16]The affirmation that Ward was under oath and the signature of a notary are missing from the copy of that affidavit that the Plaintiff filed electronically herein. This Court will nevertheless consider Ward's affidavit when ruling on Plastipak's request for summary judgment, given that Defendant has not challenged that affidavit, on those grounds. That affidavit was initially submitted in a proceeding against the Defendant pending before the Industrial Commission of Ohio, wherein Plastipak has been represented by the same counsel therein. This Court assumes that Defendant and its counsel were provided copies of that affidavit, containing the material missing herein, during that proceeding.

thumb.[17]  The Plaintiff has also cited the report of his expert witness, Alan Riga, in support of the proposition that similar incidents have occurred.  Given that the Court has stricken that report (see Doc. #31), it is not necessary to address the Plaintiff's assertion predicated upon same.  Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether substantially similar, prior incidents had occurred.

In sum, given that the Court has concluded that there is no evidence of how the incident in question occurred or of substantially similar, prior incidents, it holds that the evidence fails to raise a genuine issue of material fact as to the second prong of the Fyffe test.  Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. #22).  Judgment is to be entered in favor of the Defendant and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


April 21, 2008

 

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

---

[17]Parenthetically, in his affidavit, Ward also reviews changes that the Defendant has made to the manner in which Graham Wheels are operated, since the occurrence of the incident involving Champion.  However, given that proof of subsequent remedial measures is inadmissible to prove an intentional tort, evidence of same "cannot raise an issue of material fact for purposes of summary judgment." Pollock v. Delphi Packard Elec. Systems, 2001 WL 1299271 (6th Cir. 2001) (citing Fed. R. Evid. 407).

Copies to:

Counsel of Record.